IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VACHO SHAHEN,<br>           Plaintiff,<br><br>          v.<br><br>JOHN DOE FEDERAL BUREAU OF<br>PRISON EMPLOYEES 1-96, JOHN DOE<br>CORRECTIONAL OFFICERS 1-96,<br>WILLIAM BRANDT, TROY DANIELS,<br>AND MICHAEL PLISAK,<br>           Defendants. | CIVIL ACTION<br><br><br><br>NO.  21-1397 |

**MEMORANDUM OPINION**

While awaiting trial at the Federal Detention Center in Philadelphia ("FDC"), Plaintiff Vasco Shahen was twice assaulted by unknown inmates in the common room of his cellblock, in view of nearby corrections officers.  He now brings suit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against correctional officers and employees of the FDC for failure to protect, failure to intervene, supervisor liability, bystander liability, intentional infliction of emotional distress, and negligence.  For the reasons that follow, Defendants' Motion for Summary Judgment will be granted.

I.   **FACTUAL ALLEGATIONS**

On the afternoon of March 24, 2019, Plaintiff was in the common area of Cellblock 5 North of the FDC, eating cereal and watching television.  A disagreement arose between Plaintiff and another inmate about what to watch and the latter punched Plaintiff in the head.  A corrections officer broke up the fight and the other inmate was taken away.  The officer told Plaintiff that the incident had been videorecorded and that a supervisor was on the way.

The aggressor soon returned, however, this time with two friends, and together they

attacked Plaintiff again, causing a nose fracture, an eye fracture, an acute bilateral temporomandibular joint injury, lacerations, two black eyes, and a concussion. Since that day, Plaintiff has suffered blurry vision, headaches, insomnia, depression, and anxiety. He anticipates that he will continue to need medical treatment for his physical and psychological injuries.

Plaintiff filed an Amended Complaint on June 30, 2021, asserting various claims founded on the premise that named and unnamed correctional officers and employees of the FDC "knew of the substantial risk of serious harm faced by Plaintiff and failed to take required actions for his safety and well-being." After the close of fact discovery, Defendants filed the instant Motion for Summary Judgment and Alternatively to Dismiss the Amended Complaint.

## II. LEGAL STANDARDS

To prevail on a summary judgment motion, "the movant must show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992) (quoting Fed. R. Civ. P. 56(c)). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of [the] burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).

If the movant bears the burden of proof at trial, summary judgment should not be granted "unless a reasonable juror would be compelled to find [the movant's] way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). The movant bears the initial burden of identifying those portions of the record "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. "The non-

moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Abington Friends Sch.*, 480 F.3d at 256.  In evaluating the motion, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations marks and alterations omitted).

### III.  DISCUSSION

#### A.  Legal Standards

Previously, plaintiffs challenging prison conditions were not required to exhaust administrative remedies before filing suit in court. *Porter v. Nussle*, 534 U.S. 516, 523 (2002). But in 1980, Congress opened a new chapter in prisoner litigation with the passage of the Civil Rights of Institutionalized Persons Act. *Id.* This Act granted district courts discretion to stay an action brought by a state prisoner under 42 U.S.C. § 1983 "while the prisoner exhausted available 'plain, speedy, and effective administrative remedies.'" *Id.* (quoting 42 U.S.C. § 1997e (1994 ed.)).  A few years later, "Congress invigorated the exhaustion prescription" through the enactment of the Prison Litigation Reform Act of 1995 (the "PLRA"). *Id.*  The PLRA, which governs the exhaustion of administrative remedies today, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As amended, this provision of the PLRA is broad in scope and strict in application. Exhaustion is now a mandatory precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This mandate applies not only to state prisoners bringing suit under

3

Section 1983, but to federal prisoners challenging conditions of confinement pursuant to *Bivens*. *Porter*, 534 U.S. at 524. Prisoners must now exhaust all "available" remedies, regardless of whether they are "plain, speedy, and effective." *Id*. They must do so even if the relief they seek is not available through the prison's grievance procedures, and even if recourse to those procedures would be futile. *Booth v. Churner*, 532 U.S. 731, 741 & n.6 (2001). A failure to comply with the PLRA results in the dismissal of the complaint. *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000).

The only exception to the PLRA's exhaustion requirement is that a prisoner need not exhaust a remedy that is not "available." *Ross v. Blake*, 578 U.S. 633, 648 (2016). The availability exception means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 642. For example, a remedy is unavailable if "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates"; if "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44. "The availability of administrative remedies to a prisoner is a question of law." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

### A. Availability of Relief

Plaintiff does not dispute that the PLRA applies to his suit; he contends that the FDC's administrative remedies were not available because of a language barrier. Specifically, Plaintiff asserts in his opposition brief that he "was not informed about the facility's policies or procedures" in his native Armenian, even though "correctional facility staff knew or should have known that Plaintiff was not a fluent English speaker, and could not fully comprehend written or spoken English."

4

Plaintiff finds support for this argument in a Seventh Circuit case, *Ramirez v. Young*, 906 F.3d 530 (7th Cir. 2018). The *Ramirez* Court held that due process requires prisons to "take[] reasonable steps to inform the inmates about the required [grievance] procedures." *Id*. at 537-38. It concluded on a motion to dismiss that no administrative remedies had been made available to Ramirez because the complaint alleged that the prison knew he did not speak English at all but took no action to make the grievance procedures known to him in his language. *Id*. at 538.

The Third Circuit, albeit in an unpublished case, has recognized that language barriers can make administrative remedies unavailable. *See Mendez v. Sullivan*, 488 F. App'x 566 (3d Cir. 2012). Mendez spoke no English and argued that he had not been informed of the prison's grievance procedures, which were only available in Spanish on request. *Id*. at 568. The Third Circuit held that, because Mendez had "provided nothing in support of his bare assertions," he had "failed to establish any dispute of material fact." *Id*.

Like Mendez, Plaintiff has not supported his contention that the FDC did not inform him of its grievance procedures with an affidavit or any other record evidence. A plaintiff must "show where in the record there exists a genuine dispute over a material fact." *Abington Friends Sch.*, 480 F.3d at 256. Plaintiff has not done so here.

### B. Exhaustion

As Plaintiff has not shown a genuine dispute of material fact concerning the availability of grievance procedures, the next step is to determine whether Plaintiff exhausted the remedies available to him. A failure to exhaust administrative remedies is an affirmative defense that must be proven by the Defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218. Although exhaustion is a precondition to filing suit, *Woodford*, 548 U.S. at 85, "[a]s long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint

5

is not required by the PLRA." *Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. 2007) (unpublished).

### i. *Formal Grievance*

In support of their argument that Plaintiff did not exhaust his administrative remedies, Defendants cite to the declaration of Jonathan Kerr, a Senior CLC Attorney for the Federal Bureau of Prisons Northeast Regional Office. Kerr's declaration describes the administrative remedies program adopted by the Bureau of Prisons ("BOP"), citing to the relevant portions of the Code of Federal Regulations.[1] According to Kerr, if an inmate has concerns about conditions of confinement, he or she must first attempt informal resolution with staff. If the inmate is unable to resolve those concerns informally, he or she may initiate formal procedures by filing a written complaint. Attached to Kerr's declaration is a computer printout showing a BOP record of "every Administrative Remedy filed by Plaintiff while in BOP custody," with the phrase "NO REMEDY DATA EXISTS." Kerr attested that this printout shows that Plaintiff "has not filed or attempted to file an Administrative Remedy at any point during his time in BOP custody, at any facility."

Plaintiff challenges Kerr's declaration on the grounds that it alone "does not reflect the grievance process within the prison itself or any individual prison policies that run contrary to or appear counterintuitive to the Federal Bureau of Prisons' instructions." But Plaintiff did not identify any difference between Kerr's declaration and the procedures laid out in the FDC's Inmate Admission & Orientation Handbook, nor did he point to any other portion of the record

---

[1] The Federal Detention Center in Philadelphia, where Plaintiff was incarcerated, is operated by BOP. *See* Federal Bureau of Prisons, *FDC Philadelphia*, https://www.bop.gov/locations/institutions/phl/ (last visited Mar. 7, 2022). The Court may take judicial notice of the information published on a government website. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

6

to support this argument.

Plaintiff next argues that the BOP computer record is "insufficient" to carry Defendants' burden, citing to *Simmons v. Gilmore*, 2021 WL 1215773 (W.D. Pa. Mar. 31, 2021). In *Simmons*, although the plaintiff introduced his grievance appeal forms into the record, the prison log had no record of any response to his administrative appeals and defendants denied that any had been filed. *Id*. at *12. The defendants relied on an affidavit from a correctional official stating that Simmons had not appealed his grievance to final review. *Id*. The district court held that the defendants had not met their burden to show a failure to exhaust in part because this affidavit did not explain the appeal forms in the record. *Id*. at *12-13. *Simmons* is distinguishable from the present case because Plaintiff has not identified any record evidence showing that he filed a formal complaint—he does not even assert that he *did* make a formal complaint. He only states, in his opposition brief, that "Defendants ignore any possibility that Plaintiff attempted to properly file a complaint, but was thwarted by circumstances outside of his control." A non-moving party cannot demonstrate a genuine dispute of fact by "merely den[ying] the allegations." *Abington Friends Sch.*, 480 F.3d at 256. Plaintiff must point to evidence in the record, *id.*, and he has not done so.

Finally, Plaintiff contends that the Kerr Declaration "amounts to nothing more than a 'vague and conclusory' statement from an attorney at an office that oversees twenty (20) institutions in ten (10) states.'" This argument does not identify a genuine dispute of fact because Kerr attested that BOP's computerized records show that Plaintiff "had not filed or attempted to file" a grievance "*at any facility*." This attestation, coupled with the computer record, sufficed to meet the Defendants' burden of "identifying those portions of the record 'it believes demonstrate the absence of a genuine issue of material fact.'" *Celotex Corp.*, 477 U.S.

at 323.  It was then incumbent on Plaintiff as the non-moving party to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue.'"  *Id*. at 324.  Plaintiff has not done so and therefore has not shown a genuine dispute of material fact concerning whether he filed a formal grievance.

      *ii.*  ***Informal Grievance***

   The analysis does not end there, however.  Kerr's declaration acknowledges that the grievance procedures begin not with the filing of a formal complaint, but by attempting "informal resolution with staff."  The Inmate Admission & Orientation Handbook supports this understanding, explaining that "[p]rior to using the Administrative Remedy Program, you must initially attempt to resolve a problem informally through communication with a staff member."  Only "if informal resolution proves unsuccessful" does the Handbook instruct inmates to file a formal Request for Administrative Remedy.

   Plaintiff contends that he exhausted his remedies informally by communicating with a staff member immediately after the second attack.  Plaintiff cites to two portions of the record in support of this contention: (1) an interrogatory answer in which he stated that he "made an informal complaint to a guard following the attack(s)" and "has made multiple requests for medical care"; and, (2) a document that appears to contain a correctional officer's notes on an investigation conducted into the attacks, and which records Plaintiff as saying, "I don't want to be housed around any of those inmates again. Can you send me to a different housing unit after this?"

   Viewing the facts and drawing reasonable inferences in the light most favorable to the Plaintiff, *Scott*, 550 U.S. at 378, the record shows that Plaintiff exhausted his administrative remedies with respect to his desire to be housed separately from his attackers and his need for

8

medical care after the assault.  Those requests, however, do not form the basis of this lawsuit.  In the Amended Complaint, Plaintiff alleges that Defendants:

1) Failed to separate Plaintiff from his assailants, and placed or kept Plaintiff in a position of danger, as a result of which Plaintiff was assaulted;

2) Failed to prevent, stop, or intervene in the assaults;

3) Failed to train or supervise other officers to ensure that they would prevent, intervene in, deescalate, or respond to the assaults;

4) Failed to maintain, adopt, or enforce policies or procedures to prevent threats and assaults, to investigate criminal affiliations, to prevent the congregation of criminally-affiliated inmates, to intervene in, deescalate, and respond to threats and assaults, and to immediately separate and apprehend inmates who threaten or assault other inmates;

5) Failed to escort the assailant away and prevent him from returning to the common room and attacking Plaintiff again, after witnessing the initial argument and assault;

6) Intentionally inflicted emotional distress by failing to protect Plaintiff from repeated assault; and,

7) Negligently failed to keep Plaintiff safe from attacks by other inmates.

None of these claims have a shared factual basis with Plaintiff's informal grievances, which sought medical care and a housing transfer after the assault.

"The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Woodford*, 548 U.S. at 95.  Otherwise, administrative exhaustion would not serve Congress's purpose: "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524-25.  Plaintiff's informal grievances concerning medical care and housing did not give Defendants a fair opportunity to consider his claims that officers failed to protect him.  Therefore, there is no material dispute of genuine fact about whether he exhausted his administrative remedies and his claims must be dismissed.  *Compare Jackson*, 244 F. App'x at 513 (holding that an inmate's grievance concerning a doctor's failure to diagnose and treat an

infected mass shared a factual basis with his claim that the doctor delayed in performing a biopsy on the mass) *with Drumgo v. Burris*, 2015 WL 4591957, at *5, 6 n.6 (D. Del. Jul. 29, 2015) (dismissing claim that a use of excessive force caused physical injuries for failure to exhaust because the plaintiff's grievance concerning the incident had only mentioned damage to property).

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**